**Jeffrey Scott WEIMAR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–719.**

Court of Criminal Appeals of Oklahoma.

Oct. 13, 1976.

Bill Pipkin, Moore, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Jeffrey Scott Weimar, hereinafter referred to as defendant, was charged in the District Court, Cleveland County, Case No. CRF–74–548, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. He was tried by a jury and convicted of the aforementioned crime. His punishment was fixed by the jury at four (4) years' imprisonment in the State Penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The State first called Charles Newton, the owner of Fontanelli's Tavern in Norman, Oklahoma. On the evening of August 27, 1974, he related closing the tavern at approximately midnight, and checking the integrity of the front entrance door. Due to construction underway at the rear of the building, he and the manager were sleeping at the site overnight to protect various building materials. He was awakened during the night and heard noises from within the tavern. After dispatching a companion to call the police, he and the manager stationed themselves at the two entrances to the tavern, and so remained until the arrival of the officers. Subsequent inspection by this witness revealed extensive damage to the front door and its locking mechanism, and that an indeterminate amount of change was missing from the cash register.

Paul Hurst, the manager of the tavern, was next called on behalf of the State. His testimony substantially corroborated that related by Mr. Newton. In addition,

he identified two metal keys, State's Exhibit Nos. 8A and 8B, as being those necessary to operate the tavern cash register, and missing after the night of the 27th, from the change drawer of the register.

Norman Police Officer Bobby Gene Harmon was next called by the State, and established the custodial sequence of the State's evidence.

Darrell Halsey, N. P. D., next testified to being one of the arresting officers on the night in question. He related that upon entering the front door of the tavern, he observed the defendant lying underneath a pool table. He identified a pry bar found at the scene, and related removing State's Exhibit Nos. 8A and 8B from pants claimed by the defendant; he also related finding a substantial amount of change in the pants. He indicated the defendant appeared normal and sober when arrested.

Johnny King, N. P. D., was the State's fifth witness, who testified to the observations that he made in his capacity as the other arresting officer. His testimony was substantially corroborative in nature to that of Officer Halsey.

At this time, the State rested, and the defendant's demurrer to the evidence was overruled.

The defendant testified on his own behalf that he did break into Fontanelli's Tavern, but indicated it was without any intention to commit a felony. He related his opinion that, due to a previous ingestion of various chemicals, and a recent consumption of beer, he was hallucinating. However, he indicated on cross-examination that his "vision" had dissipated and his "regular conscience reality" had returned prior to the forced entry into the tavern. He gave his opinion on re-direct examination that the ingestion of the chemicals earlier referred to, combined with chronic alcoholism could cause a visual hallucination.

▮ The defendant's first assignment of error is that the State failed to prove who

had rightful possession of the property, and that the defendant could not have been found guilty of burglary unless such possession was proven. This seems to us a curious allegation, in view of the record before us on appeal. The State's first witness testified to being the owner of the premises at 565 Bucanan in Norman, the building in which the defendant was arrested. This is not disputed at trial, and defendant has presented no evidence on appeal that this testimony was erroneous. The State's second witness testified to being the manager of the premises, and both he and the owner denied giving this defendant, or anyone not an employee, permission to enter. Given this set of uncontroverted facts, we can perceive of no interpretation thereof which would sustain defendant's assignment of error. Therefore we find this contention to be without merit.

▮ The defendant next contends that he was not conscious of committing the act charged, therefore the conviction was contrary to law. We have examined the instructions as given, and note that the general instruction as to intoxication was given by the trial court:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less critical by reason of his having been in such condition." (21 O. S.1971, § 153)

Under the defendant's theory of defense, it is our opinion he was entitled to a further qualification of this instruction set forth in *Gower v. State,* Okl.Cr., 290 P.2d 461 (1956), regarding a determination of the level of intoxication to ascertain if it was such as to obviate the requisite specific intent. However, this question was not properly preserved for appeal to this Court. We held in *Stuart v. State,* Okl. Cr., 522 P.2d 288 (1974) that when no instruction on a given point of law has been submitted by the defendant, any failure by the trial court to instruct on that point of

law will be examined on the appeal from conviction only for fundamental error. See, *Farrar v. State*, Okl.Cr., 505 P.2d 1355 (1973). Our perusal of the record has failed to disclose sufficient facts from which we could determine fundamental error. Defendant's recital of the facts concerning the incident appeared lucid, he acted normally upon arrest in the opinion of both arresting officers, and there was money missing from the cash register upon his arrest, which he admitted removing. Failing to find fundamental error, we must rule the defendant's second assignment of error without merit.

■ The defendant's final assignment of error is that his mental state at the time of the commission of the offense was such as to deprive him of the mental capacity to distinguish right from wrong. Defendant cites as the bases for this contention our holding in *McCarter v. State,* 14 Okl.Cr. 305, 170 P. 712 (1918) wherein we cited *Cheadle v. State*, 11 Okl.Cr. 566, 149 P. 919 (1915);

> "Insanity, though superinduced by excessive and long-continued indulgence in alcoholic liquors and known as 'delirium tremens,' or 'mania a potu,' renders a person so afflicted irresponsible for his acts, if it be of such a character as to deprive him of the mental capacity to distinguish between right and wrong . . ."

However the record is nearly devoid of facts from which we might find the existence of this condition. There was no evidence whatsoever of a prolonged and excessive consumption of alcoholic beverages, even from the defendant himself, not to speak of the absence of medical testimony thereto. The allegations of defendant to what he felt caused his "hallucinations" are woefully insignificant for this Court to make a finding contradictory to that of the trial court and jury. Therefore we find this final assignment of error to be without merit.

Finding all of defendant's assignments of error to be without merit, as we must, it is our opinion that the judgment and sentence should be, and the same is, hereby AFFIRMED.

BUSSEY and BLISS, JJ., concur.